# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:06cv190

| | |
|---|---|
| THE ESTATE OF JOHN M. MASON, BY AND THROUGH ITS DULY APPOINTED EXECUTOR, JEANNETTE W. MASON, ) ) ) ) | |
| Plaintiff, ) ) | |
| Vs. ) ) | MEMORANDUM AND RECOMMENDATION |
| UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) _____ ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss and to Strike (#9). Defendant filed its motion on August 10, 2006, making plaintiff's response due to be filed not later than August 28, 2006. LCvR 7.1. More than two weeks have now passed since that deadline, and no response or request for reopening and enlarging that deadline has been filed. Review of the docket reveals that plaintiff is represented by a member of the Bar of this court, and the certificate of service attached to the motion reveals that counsel for plaintiff has been served either through CM/ECf or through the mail. The undersigned will, therefore, recommend that defendant's Motion to Dismiss and to Strike be summarily allowed as unopposed. In addition, the court will briefly review the substance of the motion to determine whether it is well founded. Having carefully considered defendant's Motion to Dismiss and to Strike and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

# FINDINGS AND CONCLUSIONS

**I.     Background**

This is a diversity action removed from the North Carolina General Court of Justice for Transylvania County. Plaintiff's claim concerns a credit life insurance policy plaintiff's decedent, John M. Mason, obtained, which was intended to cover the balance of debt owed on his Ford F-150 truck in the event of his death. Complaint, at ¶¶ 4-5. On or about January 1, 2004, Mr. Mason applied for the policy in the face amount of $42,680.94. Id. The policy became effective on January 19, 2004, and the premiums were paid of behalf of the decedent through his installment loan agreement. Id., at ¶ 7.

Decedent died on October 9, 2005, which was less than two years after the policy became effective and before the two-year incontestability provision became applicable. Id., at ¶¶ 4 & 8. The incontestability provision of the policy provided that any statements plaintiff made to secure the policy would not be used against him to contest the validity of the policy if he survived two years. Plaintiff's decedent was three months shy of such cutoff date when he died.

Plaintiff's Complaint also provides as one of the causes of the decedent's death in the Death Certificate, "atherosclerotic cardiovascular disease." Complaint, at Ex. 3. The Death Certificate further provides that the time between onset of such disease and death was "years." The Application for Insurance provided however that in signing such application, plaintiff's decedent agreed that "[y]ou have not within the last 5 years . . . been advised to receive medical advice or treatment for . . . any condition of the Heart, Arteries . . . ." Complaint, at Ex. 1.

Plaintiff has asserted claims for breach of contract, "punitive damages," unfair and deceptive trade practices, and an implicit common law claim for bad faith denial of a claim.

Defendant has moved to dismiss, contending that plaintiff has failed to state a cognizable claim.

## II.     Motion to Dismiss for Failure to State a Cause of Action: Rule 12(b)(6)

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with

3

no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

### III. Motion to Dismiss Count One: Breach of Contract Claim

In this case, plaintiff's only allegations of any wrongdoing on the part of defendant are found in paragraph nine of the Complaint, which provides as follows:

> The Defendant's have [*sic*] refused to pay the Plaintiff's claim under the policy issued and such refusal is in bad faith in that (and/or constitute aggravated conduct) the Defendant, while taking and accepting the premiums paid by the Plaintiff's Decedent under the policy, disavowed the policy only after the death of the Descendant [*sic*] when presented with request for payment.

Complaint, at ¶ 9.

To allege a breach of a contract , "[t]he elements . . . are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C.App. 19, 26 (2000) (citation omitted). The North Carolina Court of Appeals has, in the context of a breach of a contract of insurance, gone on to hold that "where the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." Woolard v. Davenport, 166 N.C.App. 129, 134 (N.C.App. 2004). In determining whether to grant a Rule 12(b)(6) motion , the Woolard court held that a court should

> discern [whether] any fact disclosed on the face of the complaint or the documents attached thereto . . . necessarily defeats plaintiff's claim for breach of contract.

Id., at 134. In this case, the court has before it plaintiff's Complaint, the Policy, and the

**4**

Death Certificate, all of which were attached to the Complaint.

Reading Count One of the Complaint in the light most favorable to plaintiff, it appears that plaintiff has alleged that defendant (1) refused to pay a claim, (2) that a policy existed, and (3) such refusal was in bad faith, inasmuch as the defendant only disavowed the policy after plaintiff's death. At no time does plaintiff state that the denial of the claim was for an improper reason, and at no time does plaintiff make allegations that would bring the insured party "within the language of the policy." Nelson v. Hartford Underwriters Ins. Co., 630 S.E.2d 221, 229 (N.C.App. 2006)(internal quotation marks and citation omitted). Further, plaintiff fails to allege the absence of any legal impediment to payment upon the policy.

Considering all of the documents submitted with the Complaint, it does not appear that plaintiff could allege the absence of all impediments inasmuch the decedent's death was attributed to a disease of the heart and arteries, the policy contained an exclusion for such disease if diagnosed, and the Death Certificate provided that the decedent had suffered from such disease for a number of "years." While such post-mortem estimate of the time of "affliction" is not the equivalent of proof that an insured "knew" or was "diagnosed" with such disease, and therefore does not in-and-of itself defeat the claim, it certainly does not bode well for the ability of plaintiff to state a claim. At this point, the court is without any argument from plaintiff as to how this claim can be saved or whether plaintiff can allege in good faith that the decedent had no knowledge of such disease, that no impediment existed to payment of the claim, and that defendant wrongfully denied such claim in breach of the contract of insurance.

Finding that plaintiff has failed to state a cognizable claim for breach of contract, the undersigned will respectfully recommend that the district court dismiss Count One.

**IV. Motion to Dismiss Count Two: Punitive Damages**

As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).

Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215-16 (2001) (citation omitted). In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a).

Finding that plaintiffs cannot assert punitive damages as an independent cause of action, the undersigned will recommend that such claim be dismissed as non-justiciable. To the extent the district court may consider such to be an actual cause of action, the undersigned will alternatively recommend that such be dismissed for plaintiff's failure to first allege a claim upon which she could show that she is entitled to compensatory damages or to allege any fraud, malice, or willful or wonton misconduct by defendant. The undersigned

6

will, therefore, recommend that the district court dismiss Count Two of the Complaint.

## V.   Motion to Dismiss Count Three: Unfair and Deceptive Trade Practices

Defendant has also moved to dismiss "Count Three" of plaintiff's Complaint. In this count, plaintiff contends that defendant committed an unfair trade practice when it denied her claim.

A state-law claim under the Unfair and Deceptive Trade Practices Act ("UDTPA") is governed by Chapter 75-1.1(a) of the North Carolina General Statutes. When such alleged unfair trade practice concerns a denial of an insurance claim, Chapter 58-63-13 also comes into play and provides 14 different practices which, if alleged, will form a per se cause of action under the UDTPA.

First, Chapter 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977) In response to a decision of the North Carolina Supreme Court in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id. The UDTPA is, without doubt, a law regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993); Buie v. Daniel Int'l, 56 N.C. App. 445, 448, cert. denied, 305 N.C. 759

7

(1982). To state a cause of action under the UDTPA, plaintiff must allege acts upon which a reasonable jury could find in her favor on each of the following elements:

   (1)   conduct constituting an "unfair or deceptive act or practice;"

   (2)   conduct "in or affecting commerce," and

   (3)   that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996).

Inasmuch as plaintiff's UDTPA claim is based on a contractual right, she must also allege that defendant acted immorally, oppressively, unscrupulously, or in a manner that substantially injurious to consumers or that there were aggravating circumstances attendant to the alleged breach of contract. Generally, even an allegation of an *intentional* breach of contract will not support an action for unfair and deceptive trade practices under the North Carolina statute. United Roasters, Inc. v. Colgate-Palmolive Co., 485 F. Supp. 1049, 1060 (E.D.N.C. 1980), aff'd, 649 F.2d 985 (4th Cir.), cert. denied, 454 U.S. 1054 (1981); Pappas v. NCNB Nat'l Bank, 653 F. Supp. 699 (M.D.N.C. 1987). A UDTPA claim based on a breach of contract will only survive a Rule 12(b)(6) motion if a plaintiff alleges:

> substantial aggravating circumstances attending the breach.... [T]o find such factors one would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach.

Bartolomeo v. S. B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)(citations omitted).

In reviewing the Complaint for such additional allegations, it appears that plaintiff has alleged that defendant denied in her claim in bad faith. In North Carolina, even allegations of a bad faith denial of a claim for insurance benefits will not suffice in alleging a claim for unfair and deceptive trade practices. Beasley v. nat'l Sav. Life Ins. Co., 75 N.C.App. 104, 109 (1985). Further, in paragraph nine of Complaint (which was incorporated into the UDTPA claim through paragraph 15), plaintiff contends that defendant "disavowed" the

8

policy only after "accepting the premiums paid" and did so only after a claim was filed. Complaint, at ¶ 9. Such allegation does not amount to an immoral, oppressive, or unscrupulous act inasmuch as there would be in every insurance case no claim to deny unless premiums were paid. This court cannot imagine that insurance companies would seek to verify the truth of an insured's application for credit life insurance unless and until a claim was made. Put another way, the beneficiary of a policy of insurance cannot call "foul" when an insurance company fails to uncover, *ab initio*, the misrepresentation of the insured.

In the alternative to alleging malicious conduct on the part of the insurance company, a plaintiff may also state a cognizable claim under the UDTPA where she alleges that her claim was denied based on an unlawful insurance practice. The statutory practices that if alleged and later proved will form a *per se* violation of the UDPTA are listed in Chapter 58-63-15(11) of the North Carolina General Statutes. In this case, plaintiff has referenced Chapter 58-54.4, which was a predecessor to the now applicable chapter, and the court will deem such reference to be to Chapter 58-63-13(11). When a UDTPA claim is made in the context of denial of a claim for benefits under a policy of insurance, "[v]iolation of any form of conduct listed in § 58-63-15(11) operates as a *per se* instance of unfair and deceptive trade practice under N.C. Gen.Stat. § 75-1.1." Murray v. Nationwide Mut. Ins. Co., 123 N.C.App. 1, 10 (1996), *disc. review denied,* 345 N.C. 344 (1997).

Plaintiff does not, however, indicate in her Complaint which of those 14 provisions were violated when defendant denied her claim. The court has read each provision under Chapter 58-63-15(11) alongside plaintiff's Complaint and can find no allegation that could conceivably support a jury finding in her favor. Indeed, "disavowing a policy" only after a claim is made, premiums are paid, or the death of the insured is not a forbidden insurance practice. That a claim was denied in "bad faith" is a legal conclusion, not a forbidden

9

practice. While a defendant has a duty to defend against allegations, plaintiff has a duty to allege with sufficient clarity as to notify defendant what it purportedly did wrong. In this case, defendant appears to have done due diligence in reviewing the claim by reviewing the death certificate. When it saw that the cause of death was an illness excludable by the terms of the policy, it did what it lawfully could do, deny the claim. At that time, the burden shifted to plaintiff to either show such disease was "undiagnosed" or, perhaps, show that defendant had somehow colluded with the car dealer in a manner that would have violated Chapter 58-63-15(11) or some other legal or factual reason that would require the defendant to pay the amounts allegedly due under the policy. Simply invoking Chapter 58-63-15(11) does not suffice; rather, "[t]he facts pleaded in the complaint determine whether the complaint states a claim upon which relief can be granted." Smith v. Nationwide Mut. Fire Ins. Co., 96 N.C.App. 215, 219 (1989).

The undersigned must, respectfully, recommend to the district court that Count Three of plaintiff's Complaint be dismissed.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss and to Strike (#10) be **ALLOWED**, and that this action be **DISMISSED** in its entirety for failure to state a cognizable claim.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court

will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: September 14, 2006

Dennis L. Howell
United States Magistrate Judge